UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF HOLLYWOOD FIREFIGHTERS' PENSION SYSTEM, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>Defendants. | Case No. 23-cv-02445-JST<br><br>**ORDER REGARDING MOTIONS TO CONSOLIDATE AND APPOINT LEAD PLAINTIFF AND COUNSEL**<br><br>Re: ECF No. 48, 50, 81 |
| THOMAS E. MARTIN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN D. BLACK, et al.,<br><br>Defendants | Case No. 23-cv-03564-JST<br><br>Re: ECF Nos. 23, 24 |
| FIRE AND POLICE PENSION ASSOCIATION OF COLORADO<br><br>Plaintiff,<br><br>v.<br><br>JOHN D. BARKER et al.,<br><br>Defendants. | Case No. 23-cv-05112-JST |

Before the Court are three motions to consolidate and competing motions to appoint lead plaintiff and lead counsel. *City of Hollywood Firefighters' Pension System v. Wells Fargo & Company*, No. 23-cv-2445-JST (N.D. Cal. 2023) ("Hollywood Action"), ECF Nos. 48, 50, 81; *Martin v. Black et al.*, No. 4:23-cv-03564-JST (N.D. Cal. 2023) ("Local 33 Action"), ECF Nos. 23, 24; *see also Fire and Police Pension Association of Colorado v. Baker et al.*, No. 4:23-cv-

05112-JST (N.D. Cal. 2023) ("FPPA Action").[1]  For the reasons set forth below, the Court consolidates the actions under the Hollywood Action; appoints City of Hollywood Firefighters' Pension System as Lead Plaintiff; and appoints Kessler Topaz Meltzer & Check, LLP as Lead Counsel.

## I. CONSOLIDATION

### A. Legal Standard

"When actions involving a common question of law or fact are pending before the court, it . . . may order all the actions consolidated."  Fed. R. Civ. P. 42(a).  The "district court has broad discretion under this rule to consolidate cases pending in the same district." *Investors Research Co. v. Dist. Court*, 877 F.2d 777, 777 (9th Cir. 1989).  "In determining whether or not to consolidate cases, the Court should 'weigh the interest of judicial convenience against the potential for delay, confusion and prejudice.'"  *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010) (*quoting Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*, 720 F. Supp. 805, 806–807 (N.D. Cal. 1989)).

### B. Discussion

Each Plaintiff moves to consolidate the respective cases.  *See* Hollywood Action, ECF No. 48 at 6l; ECF No. 50 at 7; ECF No. 81 at 9.  Each Plaintiff alleges breaches of fiduciary duty against Wells Fargo's directors and officers for their failure to oversee the Company's compliance with regulatory consent orders, and all Plaintiffs agree that each action therefore involves numerous common questions of law and fact.  *Id.*  Given this factual and legal overlap, judicial convenience and the just resolution of the parties' claims would be best served through consolidation.  Therefore, the Court grants the motion to consolidate the Local 33, FPPA, and Hollywood actions.

---

[1] The Court refers to the respective Plaintiffs in each action as "Hollywood," "Local 33," and "FPPA."

United States District Court
Northern District of California

## II. APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL

### A. Legal Standard

Under Federal Rule of Civil Procedure 23.1, a district court has the inherent authority to appoint lead counsel and/or lead plaintiff as long as the plaintiff "fairly and adequately represent[s] the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." *Berg v. Guthart*, 2014 WL 3749780, at *2 (N.D.Cal., 2014) (*quoting* Fed. R. Civ. P. 23.1(a)). For purposes of Rule 23.1, "[a]n adequate representative must have the capacity to vigorously and conscientiously prosecute a derivative suit and be free from economic interests that are antagonistic to the interests of the class." *Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir. 1990).

To assess a proposed plaintiff's adequacy, courts in this circuit consider the following factors: (1) indications that the plaintiff is not the true party in interest; (2) the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit; (3) the degree of control exercised by the attorneys over the litigation; (4) the degree of support received by the plaintiff from other shareholders; (5) the lack of any personal commitment to the action on the party of the representative plaintiff; (6) the remedy sought by plaintiff in the derivative action; (7) the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; and (8) plaintiff's vindictiveness toward the defendants. *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *7 (N.D. Cal. 2013) (citing *Larson*, 900 F.2d at 1367)). Courts have also considered the factors found in the PSLRA and the Manual for Complex Litigation, "such as the quality of the plaintiff's pleadings, the vigorousness of the plaintiff's efforts, the size of the plaintiff's financial interest, and a general preference for institutional investors." *Id.*; *accord Berg*, 2014 WL 3749780 at *4.

### B. Discussion

The Court begins by noting that each proposed lead plaintiff and lead counsel would adequately represent the interests of shareholders. The proposed lead plaintiffs as a group are sophisticated, institutional investors who have experience participating as lead plaintiffs in similar shareholder derivative actions. *Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005) (adopting

Congress' reasoning underlying the PSLRA's preference for institutional investors in the context of a derivative action). Each maintains a large financial interest in Wells Fargo: Local 33 holds 17,387 shares (0.22% of its total portfolio); FPPA holds 48,821 shares (0.03% of its total portfolio); and Hollywood holds 11,200 shares (0.17% of its total portfolio). *See Hacker v. Peterschmidt*, 2006 WL 2925683, at *5 (N.D.Cal. 2006) (proposed co-lead plaintiffs who collectively held 5,500 shares "demonstrated substantial financial interest in the outcome of these actions"). Each proposed lead counsel is similarly qualified in that each has significant experience obtaining favorable results as lead counsel in shareholder derivative litigation. Therefore, the Court concludes that each of the competing movants has the capacity to vigorously prosecute this derivative action.

What distinguishes Hollywood from the other plaintiffs is its longer actionable period. Hollywood Firefighters served its Section 220 Demand on September 27, 2021, and therefore can timely assert claims based on conduct dating back to September 27, 2018. *Lebanon Cty. Emps.' Ret. Fund v. Collis*, 287 A.3d 1160, 1208–09 (Del. Ch. 2022) ("[F]or a derivative action in which the plaintiff has sought books and records, the court can calculate the actionable [three-year] period using an earlier date tied to the plaintiff's diligent pursuit of its informational rights."). In contrast, FPPA issued its books and records demand on March 17, 2023, and can timely assert claims based only on conduct dating back to March, 17, 2020. Local 33 did not make a Section 220 demand and can timely assert claims based only on conduct dating back to July 18, 2020, three years prior to filing its complaint. Hollywood's actionable period is thus eighteen months and twenty-one months longer, respectively, than those of the other Plaintiffs.

Hollywood contends that this extended actionable period is critical because Wells Fargo's misconduct between September 2018 and March 2020 period informed the $250 million OCC fine in September 2021 and the $3.7 billion CFPB Consent Order in December 2022. Hollywood alleges that during this period, "Wells Fargo's improper focus on the Asset Cap and earnings issues, and the Board's unwillingness to hold senior management responsible, was reflected in multiple years' worth of noncompliance with the various Consent Orders to which Wells Fargo was subject, as well as additional violations of federal law." Hollywood Action, ECF No. 1 ¶

112. From late 2018 through 2022, "[t]he Board was presented with and ignored numerous red flags warning that the Bank's compliance efforts were insufficient and could invite further fines and sanctions from regulators." *Id.* ¶ 4. For example, in January 2020 Wells Fargo's Internal Audit Division warned a subcommittee of the Wells Fargo Board about the "'high number of milestones . . . currently off track' under the OCC and CFPB orders." *Id.* ¶ 137. The Court agrees that allegations from this period may prove important to liability and damages.

FPPA responds that even though it commenced its 220 investigation later than Hollywood, "FPPA's allegations of red flags prior to March 2020 are [still] relevant to fiduciary duty claims under Delaware law, where the court may consider any fact that bears upon a defendant's knowledge of wrongdoing and failure to address it." FPPA is correct that pre-limitations period actions can be relevant under certain circumstances:

> It bears emphasizing that a starting date . . . for the actionable period does not mean that evidence from earlier periods is irrelevant. To determine whether the Company's business plan during the actionable period wrongfully prioritized profit over law compliance, the court must determine what business plan the officers and directors were pursuing. Answering that question requires an understanding of the state of affairs leading up to the actionable period. Likewise, to evaluate whether officers and directors acted in bad faith by ignoring red flags during the actionable period, the court must understand what they knew and understood when they made those decisions, which can take into account matters pre-dating the actionable period.

*Lebanon Cty. Emps.' Ret. Fund*, 287 A.3d at 1180. Nonetheless, "[f]or both claims . . . , liability must turn on what the officers and directors did *during the actionable period*, and damages are limited to harms that the Company suffered *during the actionable period*." *Id.* (emphasis added).

The Court does not find other considerations raised by the parties to be convincing. For example, given the significant financial stake of each of the proposed lead plaintiffs, this factor will translate into little difference, if any, in the vigor of representation. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 16-CV-05541-JST, 2017 WL 130282, at *3 (N.D. Cal. Jan. 12, 2017) (finding differences difference in relative shares "marginal" when proposed plaintiffs each held significant shares). Also, although the FPPA complaint asserts a claim under Section 14(a) of the Securities Exchange Act that the other complaints lack, "any unique information included, or

cause of action asserted, in any one complaint can easily be incorporated into a consolidated amended complaint, regardless of who is appointed lead counsel." *Richey v. Ells*, 2013 WL 179234, at *2 (D. Colo. 2013) (*citing In re Bank of Am. Corp. Sec., Derivative & "ERISA" Litig.*, 258 F.R.D. 260, 273 (S.D.N.Y. 2009)).

The Court therefore appoints City of Hollywood Firefighters' Pension System as Lead Plaintiff.

**CONCLUSION**

The Court consolidates *Martin v. Black et al.*, No. 4:23-cv-03564-JST (N.D. Cal. 2023) and *Fire and Police Pension Association of Colorado v. Baker et al.*, No. 4:23-cv-05112-JST (N.D. Cal. 2023) with *City of Hollywood Firefighters' Pension System v. Wells Fargo & Company*, No. 23-cv-02445-JST (N.D. Cal. 2023).  The Court appoints City of Hollywood Firefighters' Pension System as Lead Plaintiff, and appoints Kessler Topaz Meltzer & Check, LLP as Lead Counsel.  The Court orders Lead Plaintiff to serve and file a consolidated complaint or designate a previously-filed complaint as the operative complaint within sixty days of this Order.

IT IS SO ORDERED.

Dated:  January 2, 2024



JON S. TIGAR
United States District Judge